UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MAYNARD MUNROE,

                               Plaintiff,

        -against-

SPECIALIZED LOAN SERVICING LLC,

                               Defendant.

**<u>MEMORANDUM AND ORDER</u>**
23-CV-3083

L*A*SHANN D*E*ARCY HALL, United States District Judge:

Maynard Munroe ("Plaintiff" or "Munroe"), proceeding pro se, brings this instant action against Specialized Loan Servicing LLC ("Defendant" or "SLS"), alleging violations of the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act ("FDCPA"), credit defamation, negligence, and fraud.  Defendant moves pursuant to Federal Rule of Civil Procedure 56 for summary judgment to dismiss the Complaint in its entirety.

### UNDISPUTED FACTS[1]

On or about December 9, 2004, Plaintiff obtained a loan from Countrywide Home Loans, Inc. ("Countrywide") in the amount of $130,000.00 (the "Loan").  (Defendant's Statement of Material Uncontested Facts ("Def.'s 56.1") ¶ 2, ECF No. 36-48).)  On or about December 9, 2004, Plaintiff executed the Adjustable Rate Note in connection with the Loan (the "Note").  (*Id.*

---

[1] Plaintiff did not file an opposing 56.1 statement of undisputed facts.  *See* Local Civil Rule 56.1(c) of the United States District Courts for the Southern and Eastern Districts of New York (All material facts set forth in the statement required to be served by the moving party "will be deemed to be admitted for purposes of the motion unless specifically denied and controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); see also *Dusanenko v. Maloney*, 726 F.2d 82, 84 (2d Cir. 1984) (admitting Defendant's statement of undisputed material facts where Plaintiff did not serve the same).

at ¶ 3.)  On or about December 9, 2004, to secure the repayment of the Loan under an Adjustable Rate Note, Plaintiff executed the Mortgage which was assigned to The Bank of New York Mellon ("BNY").  (*Id.* at ¶¶ 4, 5.)  In 2012, Bank of America, National Association ("BOA"), as the former servicer of the Loan, informed Plaintiff that BNY was the owner of the Loan; and that SLS would be the new servicer of the Loan, effective November 1, 2012.  (*Id.* at ¶¶ 6, 7.)

On March 24, 2014, Plaintiff commenced an action against SLS and BNY in the United States District Court for the Eastern District of New York, under Case No. 14-cv-1883 (the "Prior Action").  (*Id.* at ¶ 9.)  In the Prior Action, Plaintiff asserted claims against SLS and BNY for violations of the Fair Credit Reporting Act ("FCRA") and the Fair Debt Collections Practices Act ("FDCPA") based upon credit reporting of the Loan and Plaintiff's request to SLS for debt validation.  (*Id.* at 10.)  In the Prior Action, the court determined that: (1) Plaintiff failed to timely dispute the debt under the Loan after receipt SLS's letter on November 9, 2012; (2) Plaintiff could not dispute the debt based on subsequent receipts of monthly mortgage statements or "dunning notices" for the Loan from SLS; and (3) SLS and BNY were entitled to assume the debt for the Loan.  (*Id.* at ¶¶ 11–13.)  In the Prior Action, the court awarded summary judgment to SLS and BNY and directed the Clerk of Court to close the case.  (*Id.* at ¶ 14.)

On or about May 26, 2016, Plaintiff tendered a payment to SLS in the amount of $83,500.89 to reinstate the Loan.  (*Id.* at ¶ 15.)  Plaintiff made regular installment payments for the Loan to SLS from June 2016 through November 2016.  (*Id.* at ¶ 16.)  On April 30, 2018, May 31, 2018, and July 2, 2018, Plaintiff made trial modification payments to SLS for the Loan.  (*Id.* at ¶ 18.)

On August 15, 2018, Plaintiff executed the Modification Agreement for the Loan, which SLS was empowered to complete by Power of Attorney from BNY to SLS, dated July 27, 2017.

(*Id.* at ¶¶ 19, 20.)  Following the execution of the Modification Agreement, Plaintiff made modified installment payments until Plaintiff defaulted.  (*Id.* at ¶¶ 21, 22.)

On February 24, 2023, SLS received a notice of a dispute from Experian regarding the credit reporting of the Loan.  (*Id.* at ¶ 25; Def.'s Ex. O, ECF No. 36-44.)  The notice informed SLS that Plaintiff disclaimed liability for the Loan and, as a result, Experian requested that SLS confirm Plaintiff's complete identity. (*Id.*)  SLS received substantially the same notice from Equifax on February 28, 2023 (Def.'s 56.1 ¶ 27; Def.'s Ex. P, ECF No. 36-45), TransUnion LLC on March 1, 2023 (Def.'s 56.1 ¶ 29; Def.'s Ex. Q, ECF No. 36-46), and Equifax again on March 18, 2023 (Def.'s 56.1 ¶ 31; Def.'s Ex. R, ECF No. 36-47).  As a distinction, in the notices from Equifax and TransUnion LLC, Plaintiff disclaimed liability on the basis of identity fraud.  (*See* Def.'s Exs. P, R, Q.)  SLS responded to each of the notices of dispute with an Automated Credit Dispute Verification ("ACDV") form to advise the CRAs that the information that it reported for the Loan was accurate and to update the last payment date, past due amount, and balance for the Loan.  (*See* Def.'s Exs. O, P, Q, R.)   SLS provided responses to Experian, Equifax, and TransUnion LLC on March 15, 2023, and again to Experian on April 3, 2023.  (*Id.*)

In a foreclosure action brought by BNY against Plaintiff, the Supreme Court of the State of New York, Queens County, entered an order dated June 23, 2023, which memorialized Plaintiff's admission on the record to his execution of the Note, the Mortgage, and Modification Agreements, and Plaintiff's default on said agreements.  (*Id.* at ¶ 23; Pending Action Order of Dismissal at 2, Ex. 27, ECF No. 36-28.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant[s] are entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see*

*also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 23 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004).  The movant may show that they are entitled to summary judgment by pointing to a lack of evidence on an essential element of the non-movant's claim.  *Simsbury-Avon Preservation Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009).  Once the movant meets their initial burden, the non-movant may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002).  The Court must believe the evidence of the non-movant and draw all justifiable inferences in his favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts.  *BellSouth Telecomms.*, *Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

"It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and emphasis omitted), including when facing a summary judgment motion, *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003).  Nevertheless, the "application of this different standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Id.* at 50 (internal quotation marks omitted).

## DISCUSSION

## I.    Fair Credit Reporting Act

4

The purpose of the FCRA is to require consumer reporting agencies ("CRAs") to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information[.]" 15 U.S.C. § 1681(b)).  The Act also imposes a duty on furnishers of information to provide accurate information and correct inaccuracies upon notification of a dispute by a consumer reporting agency.  15 U.S.C. § 1681s–2.  Of particular relevance, here, Section 1681s-2(b) sets forth the duties of furnishers of information upon notice of dispute.  *See* 15 U.S.C. § 1681s-2(b).  Specifically, Section 1681s–2(b) requires furnishers to conduct an investigation, review all relevant information provided by the CRAs, report the results of the investigation to the CRAs, and report incomplete or inaccurate information to all other CRAs.  *See* 15 U.S.C. § 1681s-2(b)(1).  To prevail on an unreasonable investigation claim under Section 1681s-2(b), plaintiff must establish that a furnisher: (1) received notice of a dispute from a CRA and (2) thereafter acted in willful or negligent noncompliance with the statute.  *Weiss v. Bethpage Federal Credit Union*, 2024 WL 3432030, at *5 (E.D.N.Y. July 16, 2024).  Courts review the adequacy of a furnisher's investigation under an objective reasonableness standard that is based on the information that "the furnisher learned about the nature of the dispute from the description in the CRA's notice of dispute."  *Rubin v. HSBC Bank USA, NA*, No. 20-cv-4566, 2024 WL 649916, at *3 (E.D.N.Y. Feb. 16, 2024).

Here, SLS does not dispute that it received notice from CRAs of Plaintiff's dispute of the Loan.  (Def.'s 56.1 at ¶¶ 25, 27, 29, 31.)  However, SLS argues that no reasonable factfinder could conclude that SLS did not reasonably investigate Plaintiff's disputes in willful compliance

with Section 1681s-2(b). (Mem. of L. in Supp. Of Def.'s Mot. for Summary J. ("Def.'s Mem.") at 12, ECF No 36-49.)  This Court agrees.

The record demonstrates that the notices that SLS received from the CRAs provided meager explanations for Plaintiff's disputes.  For example, the February 24, 2023 notice from Experian advised SLS that Plaintiff disputed the Loan because it was "not his[.]"  (Def.'s Ex. O at 1.)  SLS received almost identical notices from Equifax on February 28, 2023 where Plaintiff disputed the Loan because he claimed that he was "[n]ot liable for account [sic] (e.g. ex-spouse, business)" (Def.'s Ex. P at 1); from TransUnion LLC on March 1, 2023 where Plaintiff disputed the Loan because he "[c]laim[ed] true identity fraud, account fraudulently opened" (Def.'s Ex. Q at 2); and again from Experian on March 18, 2023 where Plaintiff provided the same explanation for the dispute as was reported by TransUnion (Def.'s Ex. R at 1.)  In response to each notice of dispute, SLS completed the Automated Consumer Dispute Verification (ACDV) form provided by CRA with Plaintiff's name, address, social security number, date of birth, date the loan account was opened, Plaintiff's history of non-payment after July 2018, the status of the loan amount, the amount of outstanding balance thereon, monthly payment amount and the past due amounts to ensure that its credit reporting reflected accurate information.  (*See* Def.'s Exs. O, P, Q, R.)  This Court finds that the investigations conducted by SLS in response to disputes that Plaintiff reported to CRAs satisfies the requirements of Section 1681s–2(b).

Courts have found investigations as detailed as those conducted by SLS to be reasonable pursuant to Section 1681s-2(b).  This is particularly so where the information contained in the dispute was meager.  When a notice from a CRA contains only "scant or vague allegations of inaccuracy, a more limited investigation may be warranted."  *Napoleon v. 5665 Sunrise Highway Corp.*, No. 18-CV-05703, 2021 WL 3469991, at *9 (E.D.N.Y. July 7, 2021).   In those

circumstances, courts have consistently held that investigations in which a CRA has confirmed the loan holder's identity and ownership of the loan are complaint with Section 1681s-2(b).  *See e.g. Jenkins v. Portfolio Recovery Associates, LLC*, No. 14-cv-3532, 2017 WL 1323798, at \*6 (E.D.N.Y. 2017) (citing *Schroeder v. Verizon Pennsylvania, Inc*., No. 10-1035, 2011 WL 2651107, at \*7 (M.D. Pa. June 16, 2011) (holding that an investigation was reasonable pursuant to 15 U.S.C. § 1681s-2(b) where the furnisher of information "conducted an investigation which allowed it to confirm the plaintiff's name and social security number on the account"); *Ritchie v. N. Leasing Sys., Inc*., No. 12 Civ. 4992, 2016 WL 1241531, at \*16-17 (S.D.N.Y. Mar. 28, 2016) "(relying upon ACDV forms submitted with the defendant's motion for summary judgment in determining whether a furnisher of information conducted a reasonable investigation)").

Furthermore, inaccuracy of furnished credit information is an essential element of a claim under Section 1681s-2(b).  *See Rubin*, 717 F.Supp.3d at 269.  This evidentiary gap is fatal.  *See Bhutta v. Vanchoc Transport Inc.*, 407 F. Supp.3d 152. 154 ("To survive summary judgment, the non-movant must present concrete evidence and rely on more than conclusory or speculative claims.")  Plaintiff maintains that after receiving a notice of dispute from the CRA, Defendant continued to report "false, negative, and inaccurate information" of "non-existent debt" to CRAs. (Pl.'s Mem. in Opp'n. for Summary J. ("Pl.'s Opp'n.") at 20, ECF No 37.).  However, Plaintiff has adduced no evidence that might support the notion that Defendant provided inaccurate information.   In fact, Defendant argues that the Plaintiff cannot plausibly claim that any of the information that SLS provided to furnishers, to include the Plaintiff's ownership of the Loan, the amount of outstanding debt that Plaintiff owes, and Plaintiff's payment history for the Loan, is inaccurate given that Plaintiff has admitted in the instant proceeding, and in three separate

actions, that he executed the Note and the Mortgage.  (Def.'s Mem. at 10-11.)  For these reasons, Plaintiff's claim pursuant to 15 U.S.C. § 1681s-2(b) does not survive summary judgment.[2]

## II.    Fair Debt Collection Practices Act

Congress enacted the Federal Debt Collection Practices Act ("FDCPA") to "eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  *Vincent v. The Money Store*, 736 F.3d 88, 96 (2d Cir. 2013) (internal quotation marks omitted).  Here, Defendant correctly argues that Plaintiff's FDCPA claim is barred by collateral estoppel.  (Def.'s Mem. at 19.)

Collateral estoppel, otherwise known as issue preclusion, prevents parties and their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding."  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir.

---

[2] Although Plaintiff has specifically enumerated two causes of action under the FCRA, he makes a scant reference to Section 1681b(f) as a threshold matter within count one which predominantly concerns Section 1681s-2(b).  (*See* Am. Compl. ¶ 38)  ("Defendant violated 15 U.S.C. § 1681b(f) by willfully and/or recklessly attaching, publishing and using Plaintiff's credit profile without a permissible purpose or authorization under the FCRA[.]")  For this reason, the Court is not altogether convinced that Plaintiff has actually asserted a separate cause of action under Section 1681b(f).  However, as Defendant correctly noted, it is ripe for dismissal in any event.  A plaintiff must substantiate a cause of action brought under Section 1681b of the FCRA with a showing "that the defendant used or obtained the plaintiff's credit report for an impermissible purpose and that the violation was willful or negligent."  *Campbell v. Portfolio Recovery Associates, LLC*, No. 16-cv-00072, 2017 WL 5067475, at *2 (E.D.N.Y. Sept. 8, 2017).  "The question of whether a report has been obtained for a permissible purpose is a legal one, which can be resolved on summary judgment."  *Id.*  Defendant argues that Plaintiff does not offer any facts to evidence that Defendant knowingly and willfully obtained Plaintiff's credit report for an impermissible purpose.  (Def.'s Mem. at 7.)  Upon review of the record, Plaintiff has not adduced any support for this claim.  Whereas, here, SLS asserts, with support from the record, that it sought Plaintiff's credit report for the permissible purpose of seeking to collect the unpaid mortgage loan debt.  (Def.'s Mem. at 8.)  Courts in the Second Circuit have consistently held that "obtaining a plaintiff's credit report for the purpose of collecting the debt owed" is a permissible purpose under Section 1681b, and therefore, "constitutes a complete defense" to a FCRA claim.  *Id.* (*See, e.g., Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, No. 08-cv-4207, 2012 WL 1038804, at *5 (E.D.N.Y. Mar. 28, 2012) ("[O]btaining information in order to collect debt is a permissible purpose."); *Stonehart [v. Rosentha;]*, [No. 01-civ-651, 2001 WL 910771, at *4 [S.D.N.Y. Aug. 13, 2001] ("The referral of [the plaintiff's] debt for collection gave [the defendant] a permissible purpose for obtaining her credit report pursuant to section 1681b."); *Edge v. Prof'l Claims Bureau, Inc.*, 64 F. Supp. 2d 115, 118 (E.D.N.Y. 1999).")  Therefore, Plaintiff's unsubstantiated claim does not survive summary judgment.

2002). The inquiry is governed by state law, and "[u]nder New York law, collateral estoppel will preclude a federal court from deciding an issue if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *McKithen v. Brown*, 481 F.3d 89, 105 (2d Cir.2007) (internal quotation marks omitted). Defendant argues that the doctrine of collateral estoppel bars Plaintiff's FDCPA claim because a court in this District granted summary judgment to SLS in the Prior Action concerning SLS's authority to collect debt on the Loan. (Def.'s Mem. at 19.) The Court agrees.

In bringing this FDCPA claim, Plaintiff proffers that SLS is not entitled to collect on the Loan for the Mortgage from Plaintiff. (Pl.'s Opp'n. at 10.) Defendant argues that this "Court already decided the issues that Plaintiff now raises in his FDCPA claim when it granted summary judgment to SLS in Plaintiff's prior action concerning the same loan, under Docket No. 14-1883 (the "Prior Action")." (Def.'s Mem. at 19.) It cannot plausibly be disputed that Plaintiff was afforded a full and fair opportunity to raise his FDCPA claims. (*See* Def.'s 56.1 ¶¶ 9-14.) In Defendant's 56.1 Statements of Undisputed Facts, Defendant asserted that Plaintiff brought a FDCPA claim against SLS and BNY for the same question that Plaintiff asserts in the FDCPA claim in this action which is whether SLS is entitled to collect on the Loan. (*Id.*) Plaintiff did not file a 56.1 statement disputing this assertion. The record demonstrates that in the Prior Action, the court necessarily decided this issue in its determination that Defendant "complied with the FDCPA" and that SLS was qualified as a debt collector. *See* the Prior Action at *Munroe v. Specialized Loan Servicing, LLC et al*, No. 14-CV-1883, 2016 WL 1248818, ECF No. 40 at 9, 19 (E.D.N.Y. Mar. 28, 2016). In response to Defendant's Motion for Summary Judgment, Plaintiff argues that collateral estoppel does not apply here because the "the present

action is for the wrongful collection practices and the fraudulent conduct that Defendant pursued in obtaining a foreclosure judgment." (Pl.'s Opp'n. at 24.)  However, as the Court recognized above, Plaintiff's assertion of such wrongdoings on the part of Defendant is premised on Plaintiff's argument that SLS was not entitled to collect on the Loan in first place.  This issue was fully and fairly litigated and decided in the Prior Action.  For these reasons, Plaintiff's FCPA claim is barred by collateral estoppel.[3]

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.


SO ORDERED.

Dated: Brooklyn, New York                   /s/ LDH_____
       March 31, 2025                       LASHANN DEARCY HALL
                                            United States District Judge

---

[3] Plaintiff argues that he has suffered from fraud, negligence, and credit defamation as a result of SLS' attempt to collect on the Mortgage. (Pl.'s Opp'n. at 21-23.)  Given that Plaintiff does not support these claims with citations to any federal statutes, the Court infers that these are common law claims.  Having dismissed the federal claims in this action, this Court declines to exercise supplemental jurisdiction over these common law claims. *See* 28 U.S.C.A. § 1367(c)(3) (District courts may use their discretion to decline to exercise supplemental jurisdiction over state law claims after dismissing a plaintiff's only federal claims, so long as the federal claims were not dismissed for lack of subject matter jurisdiction.").  Even if the Court did decide to exercise supplemental jurisdiction, these claims would fail because they are premised on Plaintiff's assertion that SLS incorrectly reported the delinquency of the Mortgage to CRAs for which Plaintiff has proffered no evidence to substantiate. Accordingly, Plaintiff's claims brought under common law are dismissed.